UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| SCOTT GEBHARDT, | : | CIVIL ACTION NO. 15-2154 (MLC) (DEA) |
| --- | --- | --- |
| | : | |
| | : | **MEMORANDUM OPINION** |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| LJ ROSS ASSOCIATES, INC., | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

**COOPER, District Judge**

This matter arises out of alleged violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 et seq. Plaintiff Scott Gebhardt contends that Defendant LJ Ross Associates, Inc. violated the FDCPA when it called him regarding collection of a debt after it had received a letter from his counsel demanding that it cease all communications to him and direct all contact to his attorney.

Plaintiff (dkt. 34) and Defendant (dkt. 33) each filed a motion for summary judgment seeking judgment in their favor.[1] We resolve both motions in this Opinion. We have considered all the filings, and resolve the matter without oral argument. See L.Civ.R. 78.1(b).

For the following reasons, we will deny Plaintiff's motion for summary judgment, and we will grant Defendant's motion for summary judgment.

---

[1] The Court will cite to the documents filed on the Electronic Case Filing System ("ECF") by the designation of "dkt." Pincites reference ECF pagination.

## BACKGROUND

Defendant LJ Ross Associates, Inc. is a debt collector. (Dkt. 34-1 at 2; dkt. 35 at 1.) [2] On August 19, 2014, Defendant was referred to collect on an allegedly unpaid debt that Plaintiff Scott Gebhardt owed to New Jersey City Power and Light. (Dkt. 34-1 at 2; dkt. 35 at 1; dkt. 39-1 at 3.) Defendant attempted to contact Plaintiff by phone regarding the debt. (Dkt. 34-1 at 2; dkt. 35 at 1.)

Plaintiff hired an attorney, who sent a certified letter, dated September 8, 2014, to Defendant. (Dkt. 34-1 at 2; dkt. 35 at 1.) The letter advised Defendant that Plaintiff had retained counsel and that all communications should be directed to counsel, not Plaintiff. (Dkt. 34-1 at 3; dkt. 34-7 at 1; dkt. 35 at 2.) The letter also "SERVE[D] AS NOTICE TO IMMEDIATELY CEASE AND DESIST CONTACTING OUR CLIENT." (Dkt. 34-1 at 3; dkt. 34-7 at 1; dkt. 35 at 2.)

Defendant maintains a post office box for receipt of mail. (Dkt. 34-1 at 3; dkt. 39-1 at 2.) The post office received the letter on September 11, 2014 at 8:47 a.m, and made it available for Defendant to pick up. (Dkt. 34-1 at 2; dkt. 39-1 at 3). A Defendant employee signed for the letter at 9:58 a.m. that same day. (Dkt. 34-1 at 3; dkt. 34-8 at 1; dkt. 35 at 1; dkt. 39-1 at 3.)

On September 11, 2014, at 10:10 a.m., Defendant placed a collection call to Plaintiff. (Dkt. 34-1 at 3; dkt. 34-9 at 1; dkt. 35 at 2.) Defendant made no further contact with Plaintiff after this phone call. (Dkt. 34-5 at 4.)

---

[2] These facts are undisputed and are taken primarily from the parties' statements and additional statements of undisputed material facts, L.Civ.R. 56.1, and responses. (Dkt. 34-1; dkt. 35; dkt. 36-1; dkt. 39-1.) We will designate any additional or disputed facts as appropriate.

An employee for Defendant processed the letter on September 14, 2014 at 5:07 p.m., and updated Plaintiff's account in the computer system, indicating that he was represented by counsel and that all Defendant employees were to cease communications with him. (Dkt. 35 at 10; dkt. 36-1 at 2.)

On March 26, 2015, Plaintiff filed suit against Defendant alleging various violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. (Dkt. 1.) Two counts remain at issue: Plaintiff's allegations that Defendant's September 11, 2014 phone call violated § 1692c(a)(2), prohibiting communications with a represented individual (Count One), and § 1692c(c), prohibiting communications after receiving notice to cease all communications (Count Two). (Id. at 4–5.) In its Answer, Defendant raised multiple affirmative defenses, but the sole remaining defense at issue is Defendant's claim that the bona fide error defense, § 1692k(c), precludes its liability under the FDCPA. (Dkt. 5 at 5.)

Plaintiff moved for summary judgment (dkt. 34); and Defendant moved for summary judgment (dkt. 33).

**DISCUSSION**

**I.     Legal Standard**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-movant must then present evidence that raises a genuine dispute of material fact. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). Material facts are those "that could affect the outcome" of the proceeding, and "a dispute about a material fact is genuine if the evidence is sufficient to permit a reasonable jury to return a verdict for

the non-moving party." Lamont v. New Jersey, 637 F.3d 177, 181 (3d Cir. 2011) (internal citation and quotation omitted). This evidence may include "citing to particular parts of materials in the record" or a "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c).

## II. Analysis

### 1. Communication with a consumer represented by an attorney, 15 U.S.C. § 1692c(a)(2)

The FDCPA prohibits a debt collector from communicating with an individual it knows to have legal representation with respect to the debt. 15 U.S.C. § 1692c(a)(2).

The relevant portion of the statute states that:

> (a) Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt--
>
> (2) if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer.

15 U.S.C. § 1692c(a)(2).

Both parties ask us to enter judgment in their favor on this issue. The parties do not dispute that Plaintiff secured legal representation, who sent a letter to Defendant notifying it of the representation, and that Defendant communicated with Plaintiff after that letter was received. (Dkt. 34-2 at 7–8; dkt. 33-1 at 11.) The sole contention between the parties, and the

4

only question for us to resolve with this count, is whether Defendant had the requisite statutory "knowledge" of the representation when it called Plaintiff.

Plaintiff argues that knowledge can be imputed upon Defendant through the rules of agency based upon the knowledge of its employees who saw that a letter was received from an attorney. (Dkt. 34-2 at 8–9; dkt. 36 at 8–9; dkt. 41 at 6.) Defendant, by contrast, argues that imputing knowledge is insufficient to meet the statutory burden because the statute requires that a debt collector actually knew of the representation, and that Plaintiff has failed to demonstrate Defendant's actual knowledge. (Dkt. 33-1 at 10–11; dkt. 39 at 5–7.)

We agree with Defendant that the statute, as a matter of law, requires the debt collector to have actual knowledge of an individual's legal representation prior to making a communication. We have previously applied § 1692c(a)(2) as requiring actual knowledge by the debt collector. See, e.g., Maldonado v. Lyons, Doughty, & Veldhuis, P.C., No. 13-1825, 2014 WL 1297612, at *3 (D.N.J. Mar. 31, 2014); Ortiz v. Malcolm S. Gerald & Assocs., Inc., No. 11-05959, 2012 WL 1831566, at *3 (D.N.J. May 17, 2012); Vega v. United Recovery Sys., L.P., No. 11-5995, 2012 WL 458468, at *3 (D.N.J. Feb. 9, 2012). Other courts have taken the same approach. See, e.g., Schmitt v. FMA Alliance, 398 F.3d 995, 998 (8th Cir. 2005); Jones v. Weiss, Neuren & Neuren, 95 F. Supp. 2d 105, 108–09 (N.D.N.Y. 2000).

The record before us contains no indication that Defendant had actual knowledge that Plaintiff was represented by counsel when it made the one call in quetion. The evidence demonstrates that a letter was received by Defendant and picked up from a P.O. Box on September 11, 2014 at 9:58 a.m. (Dkt. 34-1 at 2–3; dkt. 34-8 at 1; dkt. 35 at 1; dkt. 39-1 at 3.) However, Plaintiff has not put forth any evidence that his counsel's letter to Defendant was

5

actually read by any employee prior to Defendant's communication to him on September 11, 2014 at 10:10 a.m. The record demonstrates that the letter was reviewed and processed by Defendant on September 14, 2014 at 5:07 p.m. (Dkt. 35 at 10; dkt. 36-1 at 2.)

Plaintiff's arguments regarding what the employee receiving the mail should have done, or could have done, to read the letter and discover its contents are unavailing. The statute mandates that Plaintiff demonstrate actual knowledge of his legal representation, not just mere receipt of a letter from counsel. Simply receiving a letter from an attorney does not satisfy the higher burden of actual knowledge required by § 1692c(a)(2). Compare 15 U.S.C. § 1692c(a)(2) (violation occurs when communication is made "if the debt collector knows the consumer is represented" (emphasis added)), with 15 U.S.C. § 1692c(c)(3) (violation occurs when debt collector makes communication after the consumer provides notice, and "notification shall be complete upon receipt" (emphasis added)).

Because there is no genuine dispute of material fact that Plaintiff has failed to meet his burden of proving Defendant's actual knowledge, and thus a violation under 15 U.S.C. § 1692c(a)(2), we will enter judgment in favor of Defendant and deny Plaintiff's motion for summary judgment.

### 2. Communication after receiving notification to cease all communications, 15 U.S.C. § 1692c(c)

Plaintiff and Defendant each move for summary judgment on Plaintiff's claim under 15 U.S.C. § 1692c(c).

That subsection of the FDCPA provides that:

> If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the

> debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt . . . . If such notice from the consumer is made by mail, notification shall be complete upon receipt.

15 U.S.C. § 1692c(c).

The parties do not dispute that Defendant's September 11, 2014 phone call to Plaintiff at 10:10 a.m. was a prohibited communication[3] because it was made after Defendant received a letter from Plaintiff on September 11, 2014 at 9:58 a.m., notifying Defendant to cease all communications. (Dkt. 34-1 at 3; dkt. 34-8 at 1; dkt. 34-9 at 1; dkt. 35 at 1–2; dkt. 39-1 at 3.) Instead, Defendant argues that the communication was a bona fide error that precludes its liability under the FDCPA.

Section 15 U.S.C. § 1692k(c), the bona fide error defense, provides that:

> A debt collector may not be held liable in any action brought under [the FDCPA] if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

The defense "immuniz[es] a debt collector for an unintentional violation where reasonable error-avoidance procedures have been employed." Glover v. FDIC, 698 F.3d 139, 149 (3d Cir. 2012).

To avail itself of the bona fide error defense, a debt collector must demonstrate "(1) the alleged violation was unintentional, (2) the alleged violation resulted from a bona fide error,

---

[3] There are three types of permissible communications that a debt collector may make to the consumer, but none are applicable to the communication in question here. See 15 U.S.C. § 1692c(c)(1)–(3).

7

and (3) the bona fide error occurred despite procedures designed to avoid such errors." Beck v. Maximus, Inc., 457 F.3d 291, 297–98 (3d Cir. 2006).[4]  A mistaken legal interpretation of the FDCPA does not qualify as a bona fide error.  Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich, L.P.A., 559 U.S. 573, 582–83 (2010).  A debt collector bears the burden of proving each element of the defense by a preponderance of the evidence.  Rush v. Portfolio Recovery Assocs. LLC, 977 F. Supp. 2d 414, 428 (D.N.J. 2013).

The intent required by the fist prong is the debt collector's intent to violate the FDCPA, and not an intent to communicate with the consumer.  Rush, 977 F. Supp. 2d at 427 n.14.  This is a "subjective test that requires a credibility determination concerning the debt collector's assertions that the ensuing FDCPA violation was unintentional."  Agostino v. Quest Diagnostics, Inc., No. 04-4362, 2011 WL 5410667, at *4 (D.N.J. Nov. 3, 2011) (citing Johnson v. Riddle, 443 F.3d 723, 728-29 (10th Cir. 2006)).

The second and third prongs are objective inquiries.  Id.  A bona fide error is "one that is plausible and reasonable."  Wilhelm v. Credico, Inc., 519 F.3d 416, 420 (8th Cir. 2008).  The Supreme Court has explained that "procedures reasonably adapted to avoid any such error" may be read to apply to "processes that have mechanical or other 'regular orderly' steps to avoid mistakes—for instance, the kind of internal controls a debt collector might adopt to ensure its employees to do not communicate with consumers at the wrong time of the day."  Jerman, 559 U.S. at 587.

---

[4] Other courts have applied the bona fide error defense as a two-prong test.  See, e.g., Turner v. J.V.D.B. & Assocs., Inc., 330 F.3d 991, 995–96 (7th Cir. 2003) (requiring debt collector to demonstrate "(1) the violation was unintentional, resulting from a 'bona fide error,' and (2) that error occurred 'notwithstanding the maintenance of procedures reasonably adapted to avoid any such error'").

Defendant argues that the defense applies because it has demonstrated all three elements. First, it did not intend to violate the FDCPA. (Dkt. 33-1 at 13.) Second, making the phone call only twelve minutes after receiving the letter from Plaintiff's counsel was not unreasonable and was a bona fide error. (Id.) Third, Defendant had in place reasonable precautions to protect against making communications after the receipt of a cease all communications letter. (Id. at 13–14.) Defendant notes that the FDCPA does not require a debt collector to have "foolproof" procedures, but rather to take reasonable precautions. (Id.)

Plaintiff does not contest whether the alleged violation was unintentional or whether the alleged violation resulted from a bona fide error. Instead, he argues that Defendant has not met its burden under the third prong of the defense. (Dkt. 34-2 at 10–11; dkt. 36 at 6–7.) Specifically, Plaintiff submits certain policies and procedures that Defendant could have adapted to have prevented making the communication after the receipt of the letter. (Dkt. 34-2 at 10; dkt. 36 at 6.)

With no facts in dispute regarding the first two elements, we find that Defendant has met its burden by a preponderance of evidence that the communication was not intentional and resulted from a bona fide error. The record demonstrates that Defendant did not intend to violate the FDCPA. (Dkt. 33-2 at 6.) The phone call—made twelve minutes after the letter was received at the off-site P.O. Box (dkt. 34-1 at 2– 3; dkt. 34-8 at 1; dkt. 35 at 1; dkt. 39-1 at 3)—was a "plausible and reasonable" error because it was made during the processing time between the receipt of letter and entry of the content into the computer system to remove the consumer from communications. See Wilhelm, 519 F.3d at 420.

The dispute between the parties is whether Defendant has met its burden for the third prong and demonstrated that it had reasonably adapted policies and procedures to avoid the error of making a prohibited communication twelve minutes after receiving notice to cease all communications.

Defendant has pointed to policies and procedures that it employs, specifically with respect to processing legal representation and cease and desist notifications. (Dkt. 33-2 at 2–4.)[5] These policies and procedures govern how employees must conduct themselves while attempting to collect on debts. (Id. at 2.)

All incoming mail to Defendant is forwarded to Defendant's Client Services Department, which reviews and processes the "voluminous amounts of written correspondence" the company receives daily. (Id. at 3.) The Department reviews correspondence in the order that it is received. (Id.) When notification is received, either of legal representation or to cease communication, Defendant stops communicating with the consumer who sent the correspondence. (Id. at 3–4.) Additionally, Defendant will commence an account investigation, close the account, or request additional information from the consumer or consumer's counsel, depending on the information contained in the correspondence. (Id. at 4.)

When Defendant receives notification that a consumer has retained legal representation, the employee processing the correspondence must update the consumer's

---

[5] We derive these facts from the affidavit of Rebecca Roberts, the President and CEO of LJ Ross Associates. (Dkt. 33-2.) Plaintiff did not dispute any of these statements by Defendant. (Dkt. 26-1 at 2–4.) Affidavits may establish that a debt collector has employed policies and procedures "reasonably adapted to avoid" the error at issue. See, e.g., Wilhelm, 519 F.3d at 420–21; Rush, 977 F. Supp. 2d at 438; Howe v. Reader's Digest Ass'n, 686 F. Supp. 461, 467 (S.D.N.Y. 1988).

10

account disposition code in the computer system to "3ATY." (Id. at 3.) All further communications then must be sent to counsel, rather than the consumer. (Id.) When an account has the designation "3ATY," "the account system is programmed to prevent further calls being made to a consumer." (Id. at 4.)

A similar process occurs when Defendant receives notice to cease all communications with a consumer. When Defendant receives notice that a consumer wants Defendant to cease and desist all communications, an employee must update the account disposition code in the computer system to "3600 CEASE COMMUNICATIONS." (Id.) All communications to the consumer must cease. (Id.) When an account has the designation "3600 CEASE COMMUNICATIONS," "the account system is programmed to prevent further calls being made to a consumer." (Id.)

Defendant trains newly hired employees on these policies and procedures. (Id. at 2.) It also tests employees on these policies and procedures at regular intervals. (Id.) Defendant regularly audits all policies and procedures to "ensure adherence, consistency and ongoing process improvement." (Id. at 2.) Any policy or procedure updates are promptly communicated to all employees. (Id.) An employee who fails to follow the company's policies and procedures is subject to discipline, which can include termination of employment. (Id. at 3.)

We find that, by a preponderance of evidence, Defendant has demonstrated that it had reasonably adapted procedures to prevent an error from occurring. See Rush, 977 F. Supp. 2d at 428, 439 (finding that "the declarant sets out in reasonable detail the wide range of training, communication policies, and other procedures sufficient for [Defendant] to carry its burden of

11

showing its entitlement to the bona fide error defense"). Defendant detailed policies explaining how correspondence is received, reviewed, and processed by its employees. These policies prohibit an employee from communicating with a consumer after the receipt of notification that the consumer is represented by legal counsel or that the consumer wishes Defendant to cease all communications. Defendant maintains a computer system that prevents communications from being made when coded to denote the consumer is represented by an attorney or demanded all communications to cease. Defendant's employees are trained and tested on the company's policies and procedures to ensure compliance with the FDCPA. We thus find these policies and procedures objectively reasonable to prevent the type of error complained of here.

We have previously explained that a "'processing' delay" between receipt of a cease all communications letter and entry of that information into the computer system does not necessarily mean that the debt collector did not have in place "procedures reasonably adapted to avoid an erroneous communication with consumers." See Rush, 977 F. Supp. 2d at 440. Indeed, it is inherently unreasonable to expect that Defendant have the ability to instantaneously update its records upon receipt of a cease communications letter without there being some time to process the request. See Hyman v. Tate, 362 F.3d 965, 968 (7th Cir. 2004). We have previously held that a prohibited communication one day after the receipt of a notification, while the notice was still being processed, was insufficient to defeat a bona fide error defense. See Rush, 977 F. Supp. 2d at 440 (citing Smith v. Transworld Sys., Inc., 953 F.2d 1025, 1031 (6th Cir. 1992); Beattie v. D.M. Collections, Inc., 754 F. Supp. 383, 389–90 (D. Del. 1991)). Likewise, the twelve-minute lapse between the receipt of the letter and the

communication here, while Defendant was processing the letter according to its policies procedures, does not defeat the bona fide error defense.

Plaintiff has put forth no evidence that contradicts Defendant's evidence that it has reasonable procedures designed to prevent an error from occurring. Indeed, Plaintiff does not dispute Defendant's assertions that these procedures existed and were in place. (Dkt. 26-1 at 2–4.) Although Defendant bears the burden of demonstrating that it has satisfied the affirmative defense, we may consider whether Plaintiff has put forth any evidence to demonstrate that a genuine issue of material fact exists which would preclude the entry of summary judgment. See, e.g., Wilhelm, 519 F.3d at 421 (in finding no genuine issue of material fact, "it is highly relevant that [plaintiff] made no attempt to dispute the facts set forth in affidavits by [defendant's] highest-ranking official"); Rush, 977 F. Supp. 2d at 438, 440 (noting that Plaintiff did not provide any evidence to contradict the debt collector's procedures, and reiterating on reconsideration that the "undisputed evidence sufficiently established that the bona fide error defense applied"); Howe v. Reader's Digest Ass'n, 686 F. Supp. 461, 467 (S.D.N.Y. 1988) (granting summary judgment on the bona fide error defense because "[plaintiff] has failed to adduce any evidence refuting the affidavits . . . . which demonstrate that [defendants] maintain extensive systems and procedures designed to prevent billing errors").

Rather than putting forth evidence that might create a genuine issue of material fact, Plaintiff contends that Defendant could have adopted more thorough procedures to prevent the phone call from being made. Specifically, he points to alternate procedures that in his view could have prevented the error, such as receiving mail onsite instead of using a P.O.

13

Box, picking up the mail in the morning and immediately opening it to scan for cease communication requests, or ceasing all debt collection calls until all mail is reviewed. (Dkt. 34-2 at 10; dkt. 36 at 6; dkt. 41 at 4–5.) The FDCPA, however, "'does not require debt collectors to take every conceivable precaution to avoid errors; rather, it only requires reasonable precaution.'" Parker v. Pressler & Pressler, LLP, 650 F. Supp. 2d 326, 343 (D.N.J. 2009) (quoting Kort v. Diversified Collection Servs., 394 F.3d 530, 539 (7th Cir. 2005)). Although Plaintiff argues that Defendant could have done more to prevent the communication, the FDCPA "only requires collectors to adopt reasonable procedures" and it would not be reasonable to require Defendant to immediately open and process all mail or to cease all collection calls until all mail is processed, as Plaintiff suggests. See Hyman, 362 F.3d 965 at 968; see also Rush, 977 F. Supp. 2d at 428.

Because we find no genuine issue of material fact, we conclude that Defendant has met its burden of proving that it is entitled to the bona fide error defense, thereby immunizing it from liability for a violation of 15 U.S.C. § 1692c(c). We will grant judgment in favor of Defendant and deny Plaintiff's motion for summary judgment.

## CONCLUSION

For the reasons stated above, we will grant Defendant's motion for summary judgment and we will deny Plaintiff's motion for summary judgment.

We will enter an appropriate order and judgment.

    s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge

**Dated:** June 12, 2017